IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **INDICTMENT** |
| Plaintiff, ) ) | **1 : 15 CR 231** |
| v. ) | CASE NO._____ |
| ) | Title 18, United States Code, |
| THOMAS ABDALLAH, ) | Sections 1349, 1343, 1348(2), |
| aka THOMAS ABRAHAM, ) | and 1957; Title 15, United States |
| MARK M. GEORGE, and ) | Code, Section 77e(c) |
| JEFFREY L. GAINER, ) ) | **JUDGE PEARSON** |
| Defendants. ) | |

The Grand Jury charges:

### General Allegations

At all times material herein, unless otherwise indicated:

1. Defendant THOMAS ABDALLAH, also known as THOMAS ABRAHAM ("ABDALLAH") and Kenneth A. Grant ("Grant"), not charged herein, owned and operated KGTA Petroleum, Ltd. ("KGTA"), which operated in the Northern District of Ohio, Eastern Division, and elsewhere.

2. On or about December 16, 2008, Grant caused to be filed the original articles of organization for KGTA with the Ohio Secretary of State under the name Susannah, LLC. Subsequently, on or about March 22, 2012, Grant amended the name of the company with the Ohio Secretary of State to become KGTA, which represented the initials of Grant and ABDALLAH.

3. ABDALLAH, Grant, and others, marketed KGTA to investors as a petroleum company that earned profits from buying and reselling various refined fuel products and crude oils ("fuel products").

4. Defendant MARK M. GEORGE ("GEORGE") was an attorney licensed to practice in the State of Ohio. GEORGE operated as the escrow agent for KGTA, and used his Interest on Lawyers Trust Account ("IOLTA account") to receive funds from investors and to distribute funds to KGTA, and to himself.

5. GEORGE initially maintained his IOLTA account at PNC Bank (f/k/a National City Bank), account number XXXXXX5172; however, on or about July 29, 2013, GEORGE switched his IOLTA account to Fifth Third Bank, account number XXXXXX0945. ABDALLAH and Grant, among others, told investors that their money was safe and secure because (1) GEORGE was an attorney, (2) their money was insured through an insurance policy taken out against GEORGE, and (3) GEORGE would hold their money in his IOLTA account and would release it to KGTA only when KGTA had purchased fuel and oil.

6. Defendant JEFFREY L. GAINER ("GAINER"), was a registered representative of PrimeSolutions Securities, Inc. ("PrimeSolutions"), with offices in the Akron, Ohio, area, and licensed by the Financial Industry Regulatory Authority, Inc. ("FINRA") (f/k/a the National Association of Securities Dealers ("NASD")).

7. Jerry A. Cicolani ("Cicolani"), not charged herein, was a registered representative of PrimeSolutions.

8. Although KGTA referenced various documents executed with the investors as part of a joint venture, at no time did any of the investors exercise operational control over KGTA, voting power within KGTA, or control over the money raised by KGTA.

9. KGTA entered into investments agreements with investors, and later issued promissory notes to investors, in which KGTA guaranteed that each "[p]articipant shall be paid a return of [up to] Five Percent (5%) per month on its investment."

10. At various times, ABDALLAH and Grant maintained bank accounts at US Bank, account number XXXXX2222 in the name of S&J Management; at Charter One Bank, account number XXXXXX4534 in the name of S&J Management; and, at JP Morgan Chase Bank, account number XXXXX6811 in the name of KGTA Petroleum.

11. FINRA was a self-regulatory organization which was regulated by the Trading and Markets Division of the United States Securities and Exchange Commission ("SEC"), an independent agency within the Government of the United States.

12. As a result of the activity described above, KGTA was an issuer of securities that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)).

13. At no time did ABDALLAH, Grant, GEORGE, GAINER, Cicolani, or anyone else, file any documentation related to KGTA and its sale of securities with the SEC.

3

The Grand Jury further charges:

## Count 1

(Conspiracy to Commit Wire Fraud and Securities Fraud, 18 U.S.C. §1349)

14. The general allegations set forth in paragraphs 1 through 13 of the Indictment are re-alleged and incorporated by reference herein.

## The Conspiracy

15. From in or around June 2010, through in or around March 2014, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, THOMAS ABDALLAH, MARK M. GEORGE, JEFFREY L. GAINER, Kenneth Grant, and others, knowingly and intentionally, did combine, conspire, confederate and agree together and with each other, that is: (1) to devise and intend to devise a scheme to defraud approximately 70 investors and obtain approximately $31,000,000 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme, to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals and sounds, in violation of Title 18, United States Code, Section 1343; and (2) to obtain by means of false and fraudulent pretenses, representations and promises, approximately $31,000,000 in connection with the sale of securities in KGTA which was required to file reports under section 15(d) of the Securities and Exchange Act of 1934 (15 U.S.C. 78o(d)) in violation of Title 18, United States Code, Section 1348(2).

## Objects of the Conspiracy

16. The objects of the conspiracy were (1) to enrich ABDALLAH, GEORGE, GAINER, Grant, and others, (2) to defraud approximately 70 investors by making materially false representations and promises to these investors regarding KGTA and its purchase and sale of fuel products for a profit, and (3) to conceal the scheme from regulators.

## Manner and Means

Among the manner and means by which ABDALLAH, Grant, GEORGE, GAINER, and others, carried out the conspiracy were the following:

17. ABDALLAH and Grant owned and operated individually, and at times collectively, SJGK, LLC, S&J Management, and Access Business Brokers, to promote and facilitate their oil and real estate business ventures.

18. ABDALLAH and Grant told, and caused others to tell, investors that KGTA sought investment funds to purchase fuel and oil. ABDALLAH and Grant further told, and caused others to tell, investors that KGTA had deals in place to sell the fuel and oil at a large profit. ABDALLAH and Grant told, and caused others to tell, investors that investors could earn a guaranteed 5% monthly on their investments. When ABDALLAH and Grant made these representations, ABDALLAH and Grant knew that KGTA did not actually purchase the amount of fuel and oil represented, had no deals in place to sell the fuel and oil products, and that investors would not earn 5% on their investments per month, or at any time, based on the sale of the fuel and oil products.

19. In or around June 2010, ABDALLAH and Grant represented to investor J.R. that if he/she invested in KGTA, he/she would receive 5% on his/her investment in seven to ten days. In order to avoid currency reporting requirements, and pursuant to an agreement between

5

ABDALLAH and Grant. ABDALLAH and others deposited approximately $400,000 invested by J.R. in cash in amounts under $10,000 at various banks in the Akron, Ohio, area.

20. Grant solicited the assistance of GAINER to recruit additional investors to KGTA. ABDALLAH and Grant informed GAINER that KGTA paid 5% of the total amount of funds invested per month to each investor. Based on that representation, GAINER solicited and obtained investors for KGTA. Upon obtaining an investment, GAINER determined what percentage of the 5% he would distribute to his clients, and kept the remaining percentage as his undisclosed commission.

21. GAINER negotiated with ABDALLAH and Grant to receive an undisclosed $10,000 monthly bonus for every $1,500,000 of investor money he brought to KGTA. In addition, GAINER requested and received approximately $9,000 of his fees in cash each month from Grant.

22. In order to conceal the scheme from regulators, GAINER requested that Grant pay the remainder of his monthly fees to nominees, including his wife, his children, and an entity registered to his wife called NATG, LLC.

23. Grant also solicited the assistance of Cicolani to recruit additional investors to KGTA. ABDALLAH and Grant informed Cicolani that KGTA paid 5% of the total amount of funds invested per month to each investor. Based on that representation, Cicolani solicited and obtained investors for KGTA. Upon obtaining an investment, Cicolani determined what percentage of the 5% he would distribute to his clients, and kept the remaining percentage as his undisclosed commission.

6

24. In order to conceal the scheme from regulators, Cicolani requested that Grant pay the remaining monthly fees to nominees, including an entity called Turnbury Consulting Group, L.L.C. and an entity called White Pond Wealth Management.

25. In or around June 2010, GAINER solicited a $350,000 investment from investor J.W.D. and caused J.W.D. to wire the funds to GEORGE's IOLTA account. ABDALLAH and Grant offered J.W.D. a guaranteed rate of 4% per month for his/her investment. In order to make the investment to appear legitimate to J.W.D., ABDALLAH, GEORGE, and Grant used GEORGE's IOLTA account to receive J.W.D.'s funds.

26. ABDALLAH and Grant did initially purchase fuel products with the funds J.R. and J.W.D. invested, but they never sold these fuel products. In order to conceal their failure to sell these, or any, fuel products from J.R. and J.W.D., ABDALLAH and Grant made monthly payments to J.R. and J.W.D. using funds provided by new investors, but represented to J.R. and J.W.D. that the source of these payments came from the profit obtained from reselling the fuel products.

27. After this initial purchase of fuel products, ABDALLAH and Grant did not purchase and additional fuel products. ABDALLAH and Grant also did not disclose to other investors that they had not purchased any additional fuel products with the investors' funds.

28. From in or around June 2010, through in or around March 2014, ABDALLAH and Grant, through KGTA, entered into new agreements with J.R., J.W.D., and approximately 68 new investors. Under these new agreements, ABDALLAH and Grant continued to offer a guaranteed return of 5% per month. ABDALLAH and Grant also made the following promises in KGTA's investment agreements, among others:

A.  "[t]he parties agree that no fuel will be purchased, until such time as a firm and binding Purchase Order for the sale of said fuel has been issued by a bonafide [sic] third party purchaser."

B.  "[n]o funds shall be released from Escrow [GEORGE's account] until such time as a firm Purchase Order from a bonafide [sic] third party purchaser has been received and accepted by KGTA."

C.  "KGTA shall bear all market risk."

29. KGTA also entered into escrow agreements with investors whereby ABDALLAH, Grant and GEORGE made multiple promises to investors, including, but not limited to, the following:

A.  "[f]rom time to time KGTA will submit a Bonafide [sic] Purchase Order to Escrow Agent [GEORGE] for the sale by KGTA of a specific amount of fuel oil (a "Load") which Purchase Order will be marked as approved by KGTA. Disbursement from escrow shall be utilized to create and sell the Load only."

B.  "KGTA shall cause the proceeds from the sale of the Load to be delivered directly to the Escrow Agent. Escrow Agent shall hold funds in Escrow and disburse the funds in accordance with this Agreement."

C.  "[p]articipant shall be paid a return… per month on its investment; [t]he balance, if any, shall be paid to KGTA."

30. With respect to the promises described above, ABDALLAH, Grant, and GEORGE knew that KGTA had not purchased the amount of fuel products represented, and had not sold any fuel products. Therefore, no money from the legitimate sale of fuel products was ever deposited into GEORGE's IOLTA to fund interest payments.

31. From in or around June 2010, through in or around March 2014, ABDALLAH and Grant used new money raised from investors to make recurring monthly interest payments to earlier investors. ABDALLAH and Grant concealed from the earlier investors that these payments were derived from subsequent investors, and were not the proceeds of fuel product sales.

32. From in or around June 2010, through in or around March 2014, ABDALLAH and Grant used investor money for personal expenditures and luxury items, including but not limited to: a Mercedes Benz, a boat, and mortgage payments on a high-end residential property.

33. As a result of the conspiracy, ABDALLAH, GEORGE, GAINER, Grant, and others defrauded approximately 70 KGTA investors of approximately $17,000,000 in total.

### Acts in Furtherance of the Conspiracy

34. In furtherance of the conspiracy and to effect its unlawful objects, ABDALLAH, GEORGE, GAINER, Grant, and others, committed and caused to be committed the following acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

- A. On or about February 29, 2012, ABDALLAH, GEORGE, GAINER, and Grant caused investor M.P. to send a wire transfer, which was transmitted through the Federal Reserve Wire Network ("Fedwire") system located in New Jersey, in the amount of $221,250 from Chase Manhattan Bank located in New York, to GEORGE's IOLTA account at PNC Bank, account number XXXXXX5172, located in the Northern District of Ohio.

- B. On or about May 10, 2012, ABDALLAH, GEORGE, GAINER, and Grant caused investor C.T. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $250,000 from Discover Bank located in Delaware, to GEORGE's IOLTA account at PNC Bank, account number XXXXXX5172, located in the Northern District of Ohio.

- C. On or about December 27, 2012, ABDALLAH, GEORGE, GAINER, and Grant caused investor T.M. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $750,000 from First Merit Bank, to GEORGE's IOLTA account at PNC Bank, account number XXXXXX5172, located in the Northern District of Ohio.

- D. On or about May 15, 2013, ABDALLAH, GEORGE, Grant and Cicolani caused investor J.C. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $100,000 from a Florida branch of Citizens First Bank, to GEORGE's IOLTA account at PNC Bank, account number XXXXXX5172, located in the Northern District of Ohio.

E. On or about July 29, 2013, ABDALLAH, GEORGE, Grant and Cicolani caused investor R.S. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $100,000 from a Florida branch of Citizens First Bank, to GEORGE's IOLTA account at Fifth Third Bank, account number XXXXXX0945, located in the Northern District of Ohio.

F. On or about August 13, 2013, ABDALLAH, GEORGE, Grant and Cicolani caused investor E.H. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $100,000 from a Florida branch of Bank of America, to GEORGE's IOLTA account at Fifth Third Bank, account number XXXXXX0945, located in the Northern District of Ohio.

G. On or about February 11, 2014, ABDALLAH, GEORGE and Grant caused investor S.A. to send a wire transfer, which was transmitted through the Fedwire system, in the amount of $75,000 from an Arizona branch of JP Morgan Chase Bank, to GEORGE's IOLTA account at Fifth Third Bank, account number XXXXXX0945, located in the Northern District of Ohio.

All in violation of Title 18, United States Code, Section 1349.

The Grand Jury further charges:

## Counts 2-8

(Wire Fraud, 18 U.S.C. §1343)

35. The general allegations set forth in paragraphs 1 through 13 and factual allegations set forth in paragraphs 17 through 34 of Count 1 of the Indictment are re-alleged and incorporated by reference herein.

36. From in or around June 2010, through in or around March 2014, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, THOMAS ABDALLAH, MARK M. GEORGE, JEFFREY L. GAINER, and others knowingly devised and intended to devise a scheme and artifice to defraud approximately 70 investors and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

37. On or about each of the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, ABDALLAH, GEORGE, GAINER, Grant and others, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals and pictures described below for each count, each transmission constituting a separate count.

| Count | Date | Investor | Wired Amount | Wire Origination | Wire Destination | Defendants Charged |
|---|---|---|---|---|---|---|
| 2 | 2/29/2012 | M.P. | $221,250 | Chase Manhattan Bank | PNC Bank | ABDALLAH, GEORGE, GAINER |
| 3 | 5/10/2012 | C.T. | $250,000 | Discover Bank | PNC Bank | ABDALLAH, GEORGE, GAINER |
| 4 | 12/27/2012 | T.M. | $750,000 | First Merit Bank | PNC Bank | ABDALLAH, GEORGE, GAINER |
| 5 | 5/15/2013 | J.C. | $100,000 | Citizen's First Bank | PNC Bank | ABDALLAH, GEORGE |
| 6 | 7/29/2013 | R.S. | $100,000 | Citizen's First Bank | Fifth Third Bank | ABDALLAH, GEORGE |
| 7 | 8/13/2013 | E.H. | $100,000 | Bank of America | Fifth Third Bank | ABDALLAH, GEORGE |
| 8 | 2/11/2014 | S.A. | $75,000 | JPMC Bank | Fifth Third Bank | ABDALLAH, GEORGE |

All in violation of Title 18, United States Code, Section 1343.

The Grand Jury further charges:

## Count 9

(Securities Fraud, 18 U.S.C. §1348(2))

38. The general allegations set forth in paragraphs 1 through 13 and factual allegations set forth in paragraphs 17 through 34 of Count 1 of the Indictment are re-alleged and incorporated by reference herein.

11

39. From in or around June 2010, through in or around March 2014, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, THOMAS ABDALLAH, JEFFREY L. GAINER and others, knowingly executed and attempted to execute a scheme and artifice to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of any issuer which was required to file reports under section 15(d) of the Securities and Exchange Act of 1934 (15 U.S.C. 78o(d)), to wit: approximately $31,000,000 in investment agreements and promissory notes in KGTA.

All in violation of Title 18, United States Code, Section 1348(2).

The Grand Jury further charges:

### Count 10

(Money Laundering, Title 18 U.S.C. § 1957)

40. The general allegations set forth in paragraphs 1 through 13 and factual allegations set forth in paragraphs 17 through 34 of Count 1 of the Indictment are re-alleged and incorporated by reference herein.

41. On or about August 9, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, THOMAS ABDALLAH did knowingly engage in and attempt to engage in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, to wit: after ABDALLAH caused investors' funds to be deposited into a JP Morgan Chase Bank account XXXXX6811 in the name of KGTA Petroleum, ABDALLAH transferred and caused to be transferred $45,000 of

said funds to a second JP Morgan Chase Bank account XXXXX2990 in the name of KGTA Petroleum, which ABDALLAH controlled and used for personal purposes.

All in violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

### Count 11

(Money Laundering, Title 18 U.S.C. § 1957)

42. The general allegations set forth in paragraphs 1 through 13 and factual allegations set forth in paragraphs 17 through 34 of Count 1 of the Indictment are re-alleged and incorporated by reference herein.

43. On or about February 5, 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, THOMAS ABDALLAH did knowingly engage in and attempt to engage in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, to wit: after ABDALLAH caused investors' funds to be deposited into a JP Morgan Chase Bank account XXXXX6811 in the name of KGTA Petroleum, ABDALLAH transferred and caused to be transferred $60,000 of said funds to a second JP Morgan Chase Bank account XXXXX2990 in the name of KGTA Petroleum, which ABDALLAH controlled and used for personal purposes.

All in violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

## Count 12

(Sale of Unregistered Securities, Title 15 U.S.C. § 77e(c))

44. The general allegations set forth in paragraphs 1 through 13 and the factual allegations set forth in paragraphs 17 through 34 of Count 1 of the Indictment are re-alleged and incorporated by reference herein.

45. GAINER knew that the rules of FINRA, as well as the internal policies of PrimeSolutions, prohibited brokers from accepting compensation from any business activity outside the scope of his employment with PrimeSolutions. GAINER knew he could not sell any securities, except those sold through his broker-dealer relationship with PrimeSolutions, which was regulated by the SEC. PrimeSolutions neither authorized nor approved the sale of KGTA securities, nor did PrimeSolutions offer them for sale.

46. GAINER failed to disclose on multiple questionnaires to PrimeSolutions and the SEC his role in selling securities on behalf of KGTA. Further, GAINER failed to disclose to PrimeSolutions and the SEC that he was compensated by KGTA, both directly and indirectly, for GAINER selling investments on behalf of KGTA.

### Statutory Violation

47. From in or around August 2010, through in or around February 2014, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, JEFFREY L. GAINER did unlawfully, willfully, and knowingly, make use, directly and indirectly, of any means and instruments of transportation and communication in interstate commerce and of the mails to sell a security through the use and medium of any prospectus and otherwise, where no registration statement was filed or was in effect with the United States Securities and Exchange

Commission for such security, to wit: GAINER used interstate communication and mailings to sell unregistered securities in KGTA to approximately 14 investors who collectively lost approximately $7,000,000.

All in violation of Title 15, United States Code, Section 77e(c).

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.